# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY, 962 Wayne Ave, Suite 610 Silver Spring, MD 20910<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF THE NAVY 1200 Navy Pentagon Washington, D.C. 20350-1200<br><br>*Defendant* | CIVIL ACTION NO. 19-888<br><br>**COMPLAINT** |

## PRELIMINARY STATEMENT

1. Plaintiff Public Employees for Environmental Responsibility ("Plaintiff" or "PEER") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, as amended, to compel the United States Department of the Navy ("Defendant," the "Navy," or "USN") to disclose documents requested pursuant to FOIA.

2. Plaintiff is a non-profit organization dedicated to research and public education concerning the activities and operations of federal, state, and local governments.

3. In October and November 2018, Plaintiff sent two FOIA requests to Defendant seeking records concerning Defendant's radiological remediation at the former Navy facilities at Naval Station Treasure Island in the San Francisco Bay, and certain communications related to Defendant's activities relating to radiological contamination of "Site 12," a 90-acre parcel used as an ammunition bunker, storage yard, and solid waste disposal areas, where materials with radioactive Radium-226 were buried.

4. To date, Defendant has not made any determinations on Plaintiff's FOIA requests, provided any documents responsive to Plaintiff's FOIA requests, or identified which such documents, if any, exist.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action under 5 U.S.C. § 552(a)(4)(B). This Court also has federal question jurisdiction over this action under 28 U.S.C. § 1331.

6. This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

7. This Court is a proper venue under 5 U.S.C. § 552(a)(4)(B) (providing for venue in FOIA cases where the plaintiff resides, or in the District of Columbia).

8. This Court has the authority to award reasonable costs and attorneys' fees under 5 U.S.C. § 552(a)(4)(E).

## PARTIES

9. Plaintiff, PEER, is a non-profit public interest organization incorporated in Washington, D.C. and headquartered in Silver Spring, Maryland, with field offices in California, Florida, Massachusetts, and Tennessee.

10. Among other public interest projects, PEER engages in advocacy, research, education, and litigation relating to the promotion of public understanding and debate concerning key current public policy issues. PEER focuses on the environment, including the regulation and remediation of toxic substances, public lands and natural resource management, public funding of environmental and natural resource agencies, and governmental accountability. PEER educates and informs the public through news releases to the media, through its web site, www.peer.org, and through publication of the *PEER Review* newsletter.

11. Defendant, USN, is an agency of the United States as a "military department" under 5 U.S.C. § 552(f)(1).

12. Defendant is charged with the duty to provide public access to records in its possession consistent with the requirements of the FOIA. The Defendant's refusal to provide the Plaintiff with the records requested is a violation of the FOIA, a federal law.

## STATEMENT OF FACTS

13. Treasure Island is an approximately 400-acre artificial island in the San Francisco Bay constructed for the 1939 Golden Gate International Exposition. From 1942 through 1997 the island was used as Naval Station Treasure Island until its closure as part of the Base Realignment and Closure (BRAC) process. It is currently home to approximately 2,800 persons.

14. Navy contractors cleaning up the base for years relied on an inaccurate report from 2006 titled "Final Treasure Island Naval Station Historical Radiological Assessment." In 2006, the Navy said 170 acres of the island were suitable to transfer to San Francisco for development.

15. In the following years environmental contractors continued to discover radiation in areas which had previously been declared clean. In 2009 new radiation findings led the Navy to halt operations and reassess the contractor's work plan.

16. In 2011, Treasure Island was approved for a new neighborhood development for as many as 19,000 people, and construction was subsequently planned for up to 8,000 new residences along with new commercial and outdoor developments.

17. After this initial approval was granted, it was publicized by local press that Treasure Island had been used far more extensively by the Navy for repairing, scrapping, recycling, and incinerating materials from ships which had been exposed to nuclear explosions. Naval Station

Treasure Island was also home to the "USS Pandemonium," a mock-up naval vessel which was intentionally doused with radiation to train sailors in cleaning radioactive contamination.

18. In preparation to hand off the site to the City of San Francisco for development, Navy contractors dug up and hauled off 16,000 cubic yards of contaminated dirt, some with radiation levels 400 times the Environmental Protection Agency's human exposure limits for topsoil. Even after this extensive excavation, California state public health officials believed that extensive radioactive material remained in the soil.

19. In its communications with state and municipal environmental and public health officials, the Navy has repeatedly asked that officials raise concerns only verbally so that no written records of communications between the Navy and the California Department of Toxic Substance Control (DTSC) are created. For example:

    a. Navy cleanup manager David Clark told the DTSC by email in 2010 that officials from the CDPH should express their "concerns only verbally," not in writing; the Navy wanted to avoid "another letter" to prevent the creation of a written record;

    b. Navy environmental coordinator James Sullivan wrote in another email to an official at DTSC: "If you receive the memo, don't send it to us," but send it back to the CDPH "for revisions" to prevent memos that the DTSC had "not endorsed" from reaching the Navy.

### PEER's First FOIA Request

20. On October 25, 2018, Plaintiff requested information via FOIA through the FOIAOnline system concerning radiological data at Treasure Island. Specifically, PEER requested the following:

    a. *Documents explaining the basis for the Navy's Base Realignment and Closure (BRAC) determination that the original 2006 Historical Radiological Assessment (HRA) of Treasure Island did not address all radiological isotopes/contamination, and that a supplemental HRA was needed; and*

    b. *Correspondence between the Navy and California state regulators related to the decision to conduct the supplemental HRA, and the decision as to the scope of the supplemental HRA.*

21. PEER also requested that to the extent that the Navy needed to perform a detailed review, fees be waived because "disclosure of the information is in the public interest . . . and is not primarily in the commercial interest of the requestor." 5 U.S.C. 552 (a)(4)(A).

22. On October 25, 2018, Commander, Navy Installations Command (CNIC) informed PEER by email that it had received PEER's FOIA request via FOIAonline and was reassigning it to the Naval Facilities Engineering Command (NAVFAC), as they were "the command with cognizance over the information you are requesting."

23. On October 29, 2018, NAVFAC confirmed receipt of PEER's FOIA Request by email, assigning it the index number DON-NAVY-2019-000760 and informing PEER that its request had been forwarded to the Naval Facilities Engineering Command BRAC Program Management Office.

24. On November 6, 2018, Defendant informed PEER by email that certain information it was seeking was held by Naval Sea Systems Command, 1333 Isaac Hull Avenue, SE, Washington Navy Yard, DC 20376, and that PEER's request had been forwarded to that command for direct response.

25. On November 9, 2018, the FOIAonline system sent a message to Plaintiff stating that its fee waiver request "has been determined to be not applicable as the request is not billable."

26. On November 28, 2018, USN sent a letter to PEER stating that PEER's request had been received on October 30, 2018, in conflict with its prior representation, and that USN would be unable to provide a final determination by the statutory deadline. The letter stated that the processing of PEER's request was expected to be completed by February 28, 2019.

27. PEER has received no further communications from the Navy concerning this FOIA request.

### PEER's Second FOIA Request

28. On November 29, 2018, Plaintiff requested information via FOIA concerning Defendant's radiological remediation standards for Treasure Island, communications and analyses related to those standards, and protective measures for Treasure Island residents. Specifically, PEER requested the following:

    a. *Records reflecting the current radiological remediation standard to be applied to the radiological remediation of Site 12 and the other radiologically impacted areas of the island yet to be remediated;*

    b. *Communications related to the Navy's commitment to the City of San Francisco and/or the Treasure Island Redevelopment Authority to remediate Site 12 and other radiologically impacted areas of the island to "free release" levels – i.e., levels allowing for unrestricted use of the land, from the period January 1, 2012 to present;*

    c. *Any analysis as to whether "free release" can or cannot be achieved in any of the remaining radiologically impacted areas of the island, including Site 12; and*

    d. *Documents and communications related to protective measures currently proposed to ensure there is no continuing risk to human health and the environment from exposure to the radiological isotopes found to at Treasure Island in the event that not all areas are remediated to "free release" levels.*

29. PEER also requested that to the extent that the Navy needed to perform a detailed review, fees be waived because "disclosure of the information is in the public interest . . . and is not primarily in the commercial interest of the requestor." 5 U.S.C. 552 (a)(4)(A).

30. On November 29, 2018, the FOIAonline system confirmed receipt of PEER's FOIA Request by email, assigning it the index number DON-NAVY-2019-001660.

31. On January 9, 2019, the FOIAonline system sent a message to Plaintiff stating that its fee waiver request "has been determined to be not applicable as the request is not billable."

32. On January 15, 2019, USN delivered a letter (dated January 11) to PEER by email stating that PEER's FOIA request had been received on December 12, 2018, and that USN would be unable to provide a final determination by the statutory deadline. The letter stated that the processing of PEER's request was expected to be completed by May 1, 2019. It also provided a link to the Administrative Record for the former Naval Station Treasure Island hosted on a NAVFAC webpage.

33. PEER has received no further communications from the Navy concerning this FOIA request.

## CAUSE OF ACTION: FREEDOM OF INFORMATION

34. Plaintiff restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

35. The FOIA requires federal agencies to respond to public requests for records, including files maintained electronically, to increase public understanding of the workings of government and

to provide access to government information. FOIA reflects a "profound national commitment to ensuring an open Government" and agencies must "adopt a presumption in favor of disclosure." Presidential Mem., 74 Fed. Reg. 4683 (Jan. 21, 2009).

36. The FOIA requires agencies to determine within 20 working days after the receipt of any FOIA request whether to comply with the request. 5 U.S.C. § 552(a)(6)(A)(i). Agencies may only extend this time period for an additional 10 working days in "unusual circumstances." 5 U.S.C. § 552(a)(6)(B)(i). See also 32 C.F.R. § 286.8(c) (Department of Defense FOIA Regulations superseding prior component-level regulations). The FOIA also provides that upon request, agencies are to make records "promptly available." 5 U.S.C. § 552(a)(3)(A).

### First Count: Request DON-NAVY-2019-000760

37. Plaintiff restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

38. PEER's first FOIA request was received by the Navy on October 29, 2018. A response to PEER's FOIA Request was due by statute twenty working days from that date on November 28, 2018 (counting all weekdays exclusive of Veteran's Day and Thanksgiving).

39. As of this filing, March 28, 2019, Plaintiff has not received any documents responsive to its FOIA request, or any communications from Defendant regarding this request other than those described herein.

40. Administrative remedies are deemed exhausted when an agency fails to comply with the applicable time limits. 5 U.S.C. § 552(a)(6)(C)(i). Having fully exhausted its administrative remedies for its FOIA request, PEER now turns to this Court to enforce the remedies and public access to agency records guaranteed by the FOIA.

41. Defendant's conduct amounts to a denial of the Plaintiff's FOIA request. Defendant is frustrating Plaintiff's efforts to adequately understand and educate the public regarding the environmental state of former Naval Station Treasure Island, and how the Navy is performing its duties with regard to base closures and cleanup of properties for public use.

42. Plaintiff has constructively exhausted its administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i), and now seeks an order from this Court requiring the Defendant to immediately produce the records sought in Plaintiff's FOIA request, as well as other appropriate relief, including attorneys' fees and costs.

43. Defendant's failure to make a determination on or disclose the documents requested in Plaintiff's FOIA request within the time frame mandated under FOIA is a denial and wrongful withholding of records in violation of 5 U.S.C. § 552 and DOD regulations promulgated thereunder, 40 C.F.R. part 286.

## Second Count: Request DON-NAVY-2019-001660

44. Plaintiff restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

45. PEER's second FOIA request was received by the Navy on November 29, 2018. A response to PEER's FOIA Request was due by statute twenty working days from that date on December 28, 2018 (counting all weekdays exclusive of Christmas Day). Even based on Defendant's contention that the request was received on December 12, 2018, *see* ¶ 32, *supra*, a response would be due January 11, 2019 (counting all weekdays exclusive of Christmas and New Year's Day).

46. As of this filing, March 28, 2019, Plaintiff has not received any documents responsive to its FOIA request, or any communications from Defendant regarding this request other than those described herein.

47. Administrative remedies are deemed exhausted when an agency fails to comply with the applicable time limits. 5 U.S.C. § 552(a)(6)(C)(i). Having fully exhausted its administrative remedies for its FOIA request, PEER now turns to this Court to enforce the remedies and public access to agency records guaranteed by the FOIA.

48. Defendant's conduct amounts to a denial of the Plaintiff's FOIA request. Defendant is frustrating Plaintiff's efforts to adequately understand and educate the public regarding the environmental state of Treasure Island, and how the Navy is performing its duties with regard to base closures and cleanup of properties for public use.

49. Plaintiff has constructively exhausted its administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i), and now seeks an order from this Court requiring the Defendant to immediately produce the records sought in Plaintiff's FOIA request, as well as other appropriate relief, including attorneys' fees and costs.

50. Defendant's failure to make a determination on or disclose the documents requested in Plaintiff's FOIA request within the time frame mandated under FOIA is a denial and wrongful withholding of records in violation of 5 U.S.C. § 552 and DOD regulations promulgated thereunder, 40 C.F.R. part 286.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court:

i. Enter an order declaring that Defendant wrongfully withheld requested agency documents;

ii. Issue a permanent injunction directing Defendant to disclose to Plaintiff all wrongfully withheld documents;

iii. Maintain jurisdiction over this action until Defendant is in compliance with the FOIA, the Administrative Procedure Act, and every order of this Court;

iv. Award Plaintiff attorney fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E); and

v. Grant such additional and further relief to which Plaintiff may be entitled.

Respectfully submitted on March 28, 2019,

__/s/ Paula Dinerstein_____
Paula Dinerstein, DC Bar # 333971
Public Employees for Environmental Responsibility
962 Wayne Ave, Suite 610
Silver Spring, MD 20910
(202) 265-7337
pdinerstein@peer.org

*Counsel for Plaintiff*